IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TRENCHTECH, INC., | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| EFFICIENCY PRODUCTION, INC., | : | No. 15-6383 |
| Defendant. | : | |

MEMORANDUM

Schiller, J.                                          February 10, 2016

Trenchtech, Inc., is suing Efficiency Production, Inc. ("EPI"), in this District, alleging that EPI breached an oral agreement to sell its products exclusively to Trenchtech in certain regional markets. EPI has filed a motion to dismiss or, in the alternative, transfer this action under 28 U.S.C. § 1404(a) to the Western District of Michigan for consolidation with a previously filed related action. For the reasons set forth below, the motion to transfer will be granted and the motion to dismiss will be denied as moot.

I.   BACKGROUND

Trenchtech is a Pennsylvania corporation that sells safety equipment to contractors for excavation projects. (Compl. ¶¶ 1, 5.) This equipment includes shoring products, which prevent tunnels from caving in. (*Id.* ¶ 5.) EPI is a Michigan corporation that manufactures shoring products. (*Id*. ¶¶ 2, 6.)

In 1998, Trenchtech began purchasing shoring products from EPI. (*Id*. ¶ 7.) Trenchtech became the exclusive distributor of EPI products in certain areas under an oral agreement between the parties in 2000 or 2001. (*Id.* ¶ 8.) Under this agreement, EPI agreed not to sell or rent its products to other distributors or contractors in the region, and Trenchtech agreed not to

buy shoring products from other manufacturers. (*Id*.) Since 1998, Trenchtech has purchased approximately $20 million in products from EPI. (*Id.* ¶ 9.)

In March 2010, three employees of Trenchtech resigned and founded a competing company called ShorQuip Supply, Inc. ("ShorQuip"), which began selling EPI's shoring products in the same regional markets as Trenchtech. (*Id.* ¶¶ 10–12.) On October 21, 2015, EPI sued Trenchtech in the U.S. District Court for the Western District of Michigan to recover $822,563.16 in unpaid goods and services provided to Trenchtech. *See Efficiency Prod., Inc. v. TrenchTech, Inc.*, Civ. A. No. 15-1085 (W.D. Mich. filed Oct. 21, 2015) (the "Michigan Action"). On December 1, 2015, Trenchtech filed this action in the Eastern District of Pennsylvania (the "Pennsylvania Action") claiming it lost $5 million in revenue because EPI violated the oral exclusivity agreement by selling its products to ShorQuip. On January 7, 2016, EPI filed a motion in this Court to dismiss the Pennsylvania Action, or, alternatively, to transfer the action to the Western District of Michigan to allow consolidation with the Michigan Action.

## II.   STANDARD OF REVIEW

The Third Circuit's "first-filed rule" requires that "in all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it." *EEOC v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988) (citation omitted). Because the first-filed rule rests on equitable principles, the decision to apply the rule is committed to the sound discretion of the trial court. *See id.* at 977. "Under this standard, a court must act 'with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result.'" *EEOC*, 850 F.2d at 977 (quoting *Langnes v. Green*, 282 U.S. 531, 541 (1931)). The first-filed rule applies "where the subject matter of the later filed case substantially

overlaps with that of the earlier one." *Villari Brandes & Kline, P.C. v. Plainfield Specialty Holdings II, Inc.*, Civ. A. No. 09-2552, 2009 WL 1845236, at *6 (E.D. Pa. June 26, 2009). If the court determines that the first-filed rule applies, the court may dismiss the case without prejudice or transfer the case to the forum where the first-filed action was brought, subject to the requirements of 28 U.S.C. § 1404(a). *Koresko v. Nationwide Life Ins. Co.*, 403 F. Supp. 2d 394, 403 (E.D. Pa. 2005).

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." District courts possess broad discretion in deciding motions to transfer venue, and they evaluate such motions on a case-by-case basis. *Solomon v. Cont'l Am. Life Ins. Co.*, 472 F.2d 1043, 1045 (3d Cir. 1973); *see also Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). The moving party bears the burden of proving that venue is proper in the transferee district and that transfer is appropriate. *Lindley v. Caterpillar, Inc.*, 93 F. Supp. 2d 615, 617 (E.D. Pa. 2000); *see also Shutte v. ARMCO Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970).

### III.    DISCUSSION

#### A.    The First-Filed Rule

It would be a waste of scarce judicial resources for multiple district courts to decide the same controversy. Therefore, the first court properly cognizant of the controversy should decide the issues before it. The first-filed rule applies when there is "substantial[] overlap" between the cases at issue. *Villari Brandes & Kline*, 2009 WL 1845236, at *6. Here, the critical question is whether the Michigan Action and the Pennsylvania Action are substantially related. Trenchtech takes the position that the two actions are unrelated and should proceed separately because they

revolve around two separate agreements: the Michigan Action is a straightforward and self-contained collections action concerning a contract for the sale of goods, while the Pennsylvania Action revolves around an oral exclusivity agreement.

EPI counters that the contract for the sale of goods and the exclusivity agreement are inextricably unrelated, since both revolve around EPI's agreement to sell its shoring products to Trenchtech, and Trenchtech's agreement to pay for these products. Accordingly, EPI argues that both actions are "offshoots of the same basic controversy between the parties." (Def.'s Mem. of Law in Support of Mot. to Dismiss or Transfer at 5 (quoting *Transamerica Occidental Life Ins. v. Aviation Office of Am., Inc.*, 292 F.3d 384, 389 (2002)).)

Additionally, EPI argues that Trenchtech has inadvertently conceded the interrelatedness of the two actions by repeatedly referencing the exclusivity agreement in its answer and its responses to discovery in the Michigan Action. First, EPI notes that Trenchtech mentions its status as an "exclusive distributor" of EPI's products in a motion it filed in the Michigan Action. (Def.'s Mot. to Dismiss or Transfer, Ex. C [Trenchtech's Mot. for More Definite Statement in Michigan Action.].) Second, EPI notes that Trenchtech has asserted EPI's "own breaches of contractual and common law duties" as an affirmative defense to Trenchtech's nonpayment of goods in the Michigan Action. (Def.'s Mot. for Leave to File Reply, Ex. A [Trenchtech's Answer to Michigan Compl.].) EPI argues that Trenchtech's statement refers to EPI's contractual duties under the oral exclusivity agreement, which is the focus of the Pennsylvania Action. Third, EPI claims that Trenchtech relies on the existence of the same exclusivity agreement in disputing the charges at issue in the Michigan Action. Specifically, EPI claims that Trenchtech will argue that it is entitled to reduced fees because of its status as an exclusive distributor. To this end, EPI cites a declaration from Trenchtech's president, John J. Kerrigan, from discovery in the

Michigan Action stating that "EPI agreed that Trenchtech would not be responsible for finance charges [and] that Trenchtech would get better terms than other customers." (*Id.* Ex. A [Kerrigan Decl.].) Ultimately, EPI urges the Court to apply the first-filed rule and dismiss or transfer the Pennsylvania Action.

On the one hand, EPI overstates the extent to which Trenchtech concedes the interrelatedness of the two actions. EPI does not prove that Trenchtech is actually referring to the oral exclusivity agreement in some of these examples. Indeed, Trenchtech's affirmative defense alleging EPI's breach of contractual duties does not state which contract EPI breached. Similarly, EPI does not conclusively establish that Kerrigan is referring to the oral exclusivity agreement as the basis for Trenchtech's preferable terms.

On the other hand, the examples offered by EPI effectively illustrate the ways in which the two claims are logically related and substantially overlapping. This Court agrees with EPI that the existence and terms of the oral exclusivity agreement at issue in the Pennsylvania Action bear on the debts and obligations at issue in the Michigan Action. Exclusivity is simply one of the terms of the overarching agreement between two companies concerning EPI's sale of goods to Trenchtech. Moreover, it is possible that both courts will be called upon to determine the existence and terms of the oral agreement. Finding substantial overlap between the two actions, this Court will invoke the first-filed rule for the sake of judicial economy and comity among federal courts.

    **B.**    **Transfer of the Pennsylvania Action to the Western District of Michigan**

Having determined that the first-filed rule applies, this Court may dismiss the Pennsylvania Action without prejudice, stay the action pending the resolution of the first-filed action, or transfer it to the district where the first-filed action is pending, subject to 28 U.S.C. §

5

1404(a) and the *Jumara* factors. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879–80 (3d Cir. 1995); *Law Sch. Admission Council, Inc. v. Tatro*, Civ. A. No. 15-5219, 2015 WL 9480029, at *10 (E.D. Pa. Dec. 29, 2015); *Koresko*, 403 F. Supp. 2d at 403.

Under 28 U.S.C. §1404(a), a court may transfer a civil action to another district where the action may have been properly filed. In this case, venue is proper in the Western District of Michigan because Defendant EPI resides in that district. *See* 28 U.S.C. § 1391(b)(1) ("A civil action may be brought in . . . a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."). The only remaining issue is whether EPI has demonstrated that a transfer is appropriate.

Courts in the Third Circuit apply a multi-factor test to determine whether transfer is appropriate, weighing private and public interests. *Jumara*, 55 F.3d at 879–80. The private interests include: (1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) where the claims arose; (4) the convenience of the parties given their relative physical and financial condition; (5) the convenience of the witnesses to the extent they may be unavailable for trial in a given forum; and (6) the location of books and records to the extent they could not be produced in the alternative forum. *Id*. at 879. The public interests include: (1) the enforceability of the judgment; (2) practical considerations of trial logistics; (3) the relative court congestion of the two fora; (4) the local interests of each forum in deciding local controversies; (5) the public policies of the fora; and (6) the judges' relative familiarity with the applicable law. *Id.* at 879–80. Here, Trenchtech's choice of forum and the convenience of certain witnesses appear to weigh slightly against transfer, while EPI's choice of forum weighs slightly in favor of transfer. The other factors are largely neutral.

Finally, courts in this District have held that when there is a "strong likelihood of consolidation with a related action," transfer of venue is warranted. *Villari Brandes & Kline*, 2009 WL 1845236, at *5 (citing *Prudential Ins. Co. of Am. v. Rodano*, 493 F. Supp. 954, 955 (E.D. Pa. 1980); *Maxlow v. Leighton*, 325 F. Supp. 913, 915–17 (E.D. Pa. 1971)). Indeed, "the presence of a related action in the transferee forum is such a powerful reason to grant a transfer that courts do so even where other *Jumara* factors, such as the convenience of parties and witnesses, would suggest the opposite." *Id.* (citing *Weber v. Basic Comfort, Inc.*, 155 F. Supp. 2d 283, 286 (E.D. Pa. 2001); *Travelers Indem. Co. v. E.F. Corp.*, Civ. A. No. 95-5660, 1997 W.L. 135819, at *8 (E.D. Pa. Mar. 17, 1997)). Given the existence of a pending related action in the Western District of Michigan, transfer is warranted in this case. Transfer will ensure that the dispute is resolved efficiently, avoid duplicative litigation and advance judicial comity.

## IV.     CONCLUSION

For the reasons stated above, the Court concludes that this action should be transferred to the Western District of Michigan, and will grant EPI's motion to transfer. Because the case will be transferred, this Court will deny the motion to dismiss as moot. An order consistent with this memorandum will be docketed separately.